### RICHARD IRVIN & CO., Inc., et al. v. NEW YORK CENT. R. CO. et al.

District Court, S. D. New York.

April 3, 1940.

Border Bowman, of New York City, for plaintiffs.

Henry R. Ashton, of New York City (A. M. Wiggins, of Pittsburgh, Pa., of counsel), for defendants.

WOOLSEY, District Judge.

My judgment in this cause is that the complaint herein be dismissed with all taxable costs, and all taxable disbursements and allowances.

For I hold that Claim No. 10 of the patent in suit here is invalid by reason of its not constituting an invention over the prior art, and ·

I hold further that, if the said claim were valid, it would not have been infringed by the accused device.

I. My subject matter jurisdiction is based on the fact that this is a patent cause. Title 28 United States Code, Section 41 (7), 28 U.S.C.A. § 41 (7).

There is not any question either of venue or of the locus standi of the plaintiffs involved herein.

The questions involved herein are only the validity of Claim No. 10 of the Heiniger Patent No. 1,658,678, and whether that claim has been infringed in the defendants' device, which is called the "AB" Brake Equipment.

II. This suit was founded originally on Claims 1, 4 and 10 of the Heiniger Patent No. 1,658,678.

On July 19, 1939—since the commencement of this suit—the patentee Heiniger and his trustee-assignee have filed a disclaimer of Claims 1 and 4 of this patent.

These claims read as follows:

"(1) An automatic pressure retaining valve for air brake systems, including a valve casing and a core therein operable by variations in pressure in the auxiliary reservoir for controlling the opening and closing of the triple valve exhaust by direct action of the auxiliary reservoir pressure upon the opposite ends of the core."

"(4) A pressure retaining valve for air brake systems connected with the triple valve exhaust and controlling the opening and closing thereof, said valve including a casing, a valve core, and means for normally moving said core in one direction to close the triple valve exhaust, said casing having an inlet at one end connected with and admitting pressure from the auxiliary reservoir to act upon one end of and to move the core in an opposite direction to open the triple valve exhaust."

An order discontinuing the suit in respect of Claims 1 and 4 was duly entered upon consent in this court.

III. We are left, therefore, to deal only with Claim 10. This is a very much particularized claim, and it reads, split by paragraphing into its several elements, as follows:

"(1) A pressure retaining valve for air brake systems comprising

"(2) a casing

"(3) a slide valve core in said casing adapted upon movement in opposite directions to respectively open and close the triple valve exhaust

"(4) a spring for normally moving the valve in a direction to close the triple valve exhaust

"(5) said casing having an inlet communicating with the auxiliary reservoir whereby a predetermined auxiliary reservoir pressure acts upon one end of and moves the slide valve in the opposite direction to open the triple valve exhaust to the atmosphere, and

"(6) means for by-passing excess auxiliary reservoir pressure to act upon the opposite end of the slide valve in conjunction with the spring to vary the resistance of the movement of the slide valve to open the triple valve exhaust."

Whether this claim is valid, and, if so, whether it has been infringed, is the subject matter of our inquiry.

IV. In view of Rule 52 (a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is now a work of supererogation to write a considered opinion on the facts or law in a nonjury cause or proceeding, for its place will be taken by formal findings of fact and conclusions of law separately stated.

In this proceeding, therefore, I will only refer to such facts as I think explain my decision and give a statement of my conclusions of law thereon.

The few facts, which I state, must, therefore, be supplemented by other facts to be proposed by the defendants when they submit their findings for my approval.

V. There are certain aspects of this cause that seem to be common ground. This cause is unique—at least so far as my experience in patent causes extends—in that it is a cause wherein there was access, in the sense of the Copyright law, to the patentee's disclosure; because Heiniger, *after* he had filed his application, which was on May 3, 1927, to which date his invention has, by agreement, been referred, and *before* the patent was granted, on his own initiative sent a copy of his application to the defendant Westinghouse Air Brake Company, hereinafter referred to as Westinghouse. Heiniger did this before Westinghouse had developed the brake which has been referred to during the trial as FC–3A, and which, it is agreed, is the same in principle as the AB brake.

The AB brake is the formal or commercial equipment which grew out of the FC–3A, and it came into use in 1932 after satisfactory tests of the FC–3A.

VI. There is not really very much to say on the facts here, unless a discussion of the operation of the respective devices involved should be attempted, but I leave that to the formal findings of fact.

A. I will take up the question of the prior art first. It seems to me—if, as I think I do, I understand the operations of the several prior art patents cited as an anticipation or dilution of Heiniger's invention—that the Custer Patent No. 553,481, issued January 21, 1896, which I understand is owned by the defendant Westinghouse, is an anticipation of the plaintiff's device.

I think that the Mack Patent No. 1,161,712, issued November 23, 1915, should also be ranked as an anticipation of the plaintiff's device.

The Cravens Patent No. 1,306,526, issued June 10, 1919, and the Hibbard Patent No. 788,208, issued April 25, 1909, are prior art patents in the field of the air brake art. I regard them, however, as not so near to Heiniger as to constitute an anticipation of his patent.

B. If I am wrong in holding that the Custer patent and the Mack patent are actually anticipations of Heiniger, as I may be, nevertheless taking all the four patents above mentioned together, as the most apposite prior art, I think it is perfectly clear that the plaintiff did not achieve the status of an inventor over such prior art.

■ Therefore, Claim 10 of Heiniger's patent is invalid.

The cause would have to be dismissed on that ground alone, but as I have wanted to dispose of the case fully on what I regard as the two really material questions, which have been fully tried, I will also deal with the question of infringement.

■ VII. I find that the structure complained of by the plaintiffs, which is the Westinghouse AB air brake equipment, does not infringe the Heiniger patent.

That, we must remember, as I have said frequently during the trial, is merely the draft of a device, and has never, even by a model, been reduced to three dimensional form. It has always been merely a drawing on the face of sheets of paper which are included in the patent.

But if one compares the Heiniger structure as described in the patent thereof with the Westinghouse AB brake equipment—the accused device—it will be seen that the Westinghouse AB brake, as we all know, is not a mere retaining valve. It is a whole new air brake system.

The device on which the plaintiff claims a patent—as did indeed both Custer and Mack—is an automatic retaining valve to be used on the Westinghouse "K" air brake system, a precursor of the AB brake, in place of the manually operated retaining valves which have been described at the trial and which were used on the "K" system and are now used in connection with the AB brake equipment.

The drawing, Exhibit Z, which was introduced by the defendants, shows the accused spring in the AB brake equipment. Its operation was fully discussed in the argument. It does not seem to me that *in any respect* this spring of the Westinghouse AB brake equipment is the equivalent of the spring 39 in the Heiniger patent.

I think that this is really the crux of the whole situation, because, unless these springs are equivalents, the plaintiffs cannot possibly succeed herein.

I do not know that it is necessary to go into the other elements lacking to constitute infringement, but in my numbered paragraphs of Heiniger's Claim 10, set forth above in paragraph III hereof, there is not present in the AB brake equipment either the element in sub-paragraph 5 or the element in sub-paragraph 6.

VIII. The defendants have raised, in addition, defenses of the lack of utility and of the inoperativeness of Heiniger's patented device.

I am not going to endeavor to pass on these defenses, because the elusive nature of what the plaintiff has, which is a phantom valve—something that was never seen on sea or land—makes it almost impossible satisfactorily to make up one's mind on those questions, and I do not want to go outside the necessities for the decision of this cause.

For I think it is perfectly clear from the evidence that the access to the plaintiff's patent application, voluntarily given to Westinghouse by the plaintiff, did not in any way color or assist the development of the Westinghouse AB equipment, or furnish any sustenance to Westinghouse in respect thereof.

Whether the plaintiff's valve is operative or inoperative or has utility or not, is, therefore, something with which I will

not deal in any respect, and on which findings of fact must not be submitted to me.

IX. I think that when a cause has been so carefully tried, as this has been, on both sides, and has been hammered out so well and so thoroughly as to enable me to feel that I may fairly give a judgment from the bench, it means that the lawyers for both sides have done a very good job.

Now, in order that the juridical result of this carefully tried cause may be preserved properly for whatever good it may do, I hold that the defendants' attorneys should, in their findings of fact, go into the history of air brakes as fully as the record shows it and deal, for example, inter alia, with:

1. The straight air brake

2. The automatic air brake

3. The "K" triple valve, and the air brake system founded thereon

4. The use of manual retaining valves

5. The position which the patent sought to occupy in the air brake field

6. The construction of and intended operation of the plaintiff's device

7. The AB brake and its operation in general

8. The emergency operation of the AB brake

9. The transitory emergency release position of the AB brake

10. The facts showing that there was not infringement, and

11. Any other facts on which defendants' may want findings, *leaving out the question of operativeness and utility.*

Now for a prescription as to how they shall bring the proposed findings of fact to my attention.

X. In pursuance of Rule 52(a) of the Rules of Civil Procedure, the attorneys for the defendants must prepare in accordance with this opinion and submit to me through the Clerk's office findings of the ultimate facts as above indicated and the conclusions of law as herein found.

I do not want details of evidence submitted as findings of ultimate facts, but, as above indicated, there should be findings of fact additional to those herein mentioned— which confessedly have been sketchy—in order that a full record of the situation which faced the successful defendants may be made and the result of this carefully tried cause preserved.

All proposed findings of fact and conclusions of law submitted to me must be typed in *triple spacing,* so that I may conveniently correct them if I wish to do so.

The attorneys for the defendants must give five days' notice of their proposed findings of fact and conclusions of law to the attorney for the plaintiffs.

In submitting their findings of fact, the attorneys for the defendants must *also* submit a short memorandum—*in a separate cover, bound at the left side*— and serve the same on the attorney for the plaintiffs. That memorandum must indicate accurately the pages of the evidence on which each finding of fact proposed is to be based. This is a very simple matter and makes it possible for me, as the trial judge, to look up any question of fact about which I may be in doubt, or which I have forgotten.

The attorney for the plaintiffs, if he is so advised, may on the return day of such notice submit to me and serve on defendants' attorneys criticisms of the findings of fact proposed by them.

As under Rule 52(a) only findings of fact and conclusions of law which I sign will be filed as part of the record herein, I suggest this course for the plaintiffs' attorney because counter findings of fact will not avail him aught. The plaintiffs' attorney must take his objections, if any, to my findings of fact and conclusions of law by way of appropriate assignments of error on any appeal which he may take.

XI. The signing of findings of fact and conclusions of law constitute, under the Federal Rules of Civil Procedure, the juridical act formalizing the Court's decision. But, curiously, attorneys are usually laggard in submitting them.

A sanction which will make attorneys file their proposed findings of fact and conclusions of law with reasonable promptness is, therefore, necessary. In the instant case, accordingly, I hold that unless such findings and conclusions are submitted on or before Monday, May 6, 1940, they will not be considered until after July 1, 1940, when the summer holidays will have begun.

XII. After the findings of fact and conclusions of law have been signed by me, the costs must be taxed as the next step in this litigation, and thereafter a final judgment for the defendants in accordance herewith may be submitted to me through the clerk's office for signature.

XIII. As I indicated at the beginning of this memorandum opinion, I am dismissing this cause with all taxable costs, and with all taxable disbursements and allowances which will include, of course, the per diem subsistence fee, whilst here, of out-of-town witnesses who were actually called to the witness stand at the trial See Title 28 United States Code, Section 600a to 600d, 28 U.S.C.A. §§ 600a to 600d.

XIV. In closing the trial of this cause I again express the greatest appreciation for the temper and spirit in which it has been tried, and the very admirable preparation made for it by counsel for the parties on both sides.